Now to Landowners United v. Cordova 19-1126 May it please the court. I need to start this morning with a confession. Identify yourself. I'm sorry your honor. Blair Dunn on behalf of the appellant Landowners United Advocacy Foundation. As I said I need to start this morning with a confession. I am a takings law nerd and I'm going to do my best today to attempt to geek out or to not geek out as I did when the Nicks decision came down. I still have my Federalist Society shirt that has the famous quote from Justice Thomas on the back of it about something has gone seriously awry. And I need to acknowledge right up front that ultimately I do understand that I'm facing at least two uphill climbs today. But I do think that ultimately what the Supreme Court has done in Nick gets me to the top of those hills. The steepest hill for you to climb is the Tax Injunction Act. Your honor I don't know that I agree with that statement. I do think. Then it will be an easy climb but try to do it because I don't see how you can overcome that. Well I appreciate that and I do think as we pointed out in our reply brief that Justice Kennedy's dissent maps out the top of that hill or the climb to the top of that hill rather. Certainly in Hicks there's a establishment clause but then more importantly in both the majority opinion, though it's not very clear in the majority opinion, certainly it's made clear in Justice Kennedy's dissent that when you look at the series of court cases surrounding Brown v. Board of Education and the attempts by the states to evade equal protection and evade Brown by manipulating their tax structures I believe that puts us on all fours with the situation we have here. I think that if you look at what's going on in this case in Colorado you have a situation where the state of Colorado is in effect attempting to take private property without providing the just compensation. They have clawed back that just compensation that they originally promised. I think that's akin to Brown v. Board of Education's equal protection analysis that shows up in other federal court decisions that are referenced in the majority decision in the Hibbs case. So if Hibbs stands for the proposition that there are exemptions to the Tax Injunction Act, I think this fits within that. There of course it was the establishment clause. Here it's the Fifth Amendment taking this case. Well, I'm not sure that's the best way to read Hibbs. It was in that case, maybe I'm wrong. They were trying to stop collection of attacks. They were trying to compel collection of attacks. Am I correct about that? You are, Your Honor. And I am asking for that. You don't need an exception. The statute, the TIA doesn't apply there. The TIA says you can't go to federal court to stop collection of attacks. I mean, that's a very imprecise way of putting it. And so that wouldn't apply when you're trying to get the government to collect attacks that it's not collecting. And to Your Honor's point, I agree that that is the situation. But what I'm essentially asking the Court here to do is to take what is referenced in the Hibbs decision, both in the majority and in the dissent, as this broader reading that says that when there's some sort of major constitutional implication at issue that the courts, of course, have the authority to deal with, that that applies in this situation. So it is broadening it beyond this discussion of tax credits versus tax collection. Give an example of when the Supreme Court or Circuit Court has said that TIA doesn't apply even though the suit is to try to prevent collection of attacks. There's not, Your Honor. Well, that... No, candidly, there's not. That's why you have such a steep hill to climb. I understand. I understand. And I, like I said, I do believe that the cases that are cited in the Hibbs decision, though they don't, and I think Justice Kennedy correctly points out, though that's not really what animates the Court, that's part of his dissent, he's saying that what animates the Court is actually that you have a state government attempting to avoid constitutional protections by manipulating their tax structure. I think that's important to read out of Hibbs, is that is essentially what Colorado has done in this. And they've done so to the detriment of hundreds of millions of dollars of private property rights that they have, for all practical purposes, absconded with without providing just compensation. We're not saying you don't have the right to relief. You just have to go elsewhere. I understand that, Your Honor. You just take courts and then go to the U.S. Supreme Court from there. And that's why I ultimately believe that probably the second hill is probably just as steep, if not steeper, in my opinion. Putting aside, I think that when it comes to the Tax Injunction Act, that is a steep hill. And I do acknowledge that. I do think that a state, there's no way that this Court could accurately read that a state is allowed to avoid the implications of the Fifth Amendment by the Tax Injunction Act. That just gets to the simple premise that a statute cannot supersede a constitutional protection. Congress couldn't have done that. Now that gets to And they didn't. They didn't say that you have a right, that there's no constitutional right and that's, in the tax context, you lose your constitutional right. It just says you have to proceed in a different way. You can pay the tax and then proceed, or you can just go through the state courts and then seek relief at the Supreme Court level. Correct, Your Honor. And that hooks us into the second hill. If that's what the Tax Injunction Act stands for, it's that you have to exhaust these remedies in the state court proceeding. And then we have the Nix case saying that, no, you don't. And that's, in my opinion, and candidly to the Court, I will also admit there has been a subsequent decision and some further authority from the Fifth Circuit that has come out on this. Judge Ho wrote a decision. Judge Baldock, of course, has the Williams decision, which is in the briefing and is discussed. And this decision from Judge Ho, which is, and the Court will forgive me, I can't write this down because my dyslexia will cause my numbers, but it's Fifth Circuit. It was handed out on the August 24th of this year after our briefing was complete in this case. And that's 18-60674. And essentially what you have in that case is a discussion of the tension surrounding 11th Amendment sovereign immunity, just as Judge Baldock discussed in the Williams v. UDOC case. I think that this Court has the opportunity to make a decision that is more in line with the Nix case than either Judge Ho or Judge Baldock have done at this point. Justice Roberts, in his majority opinion in Nix, discusses it 2170 to 2171, a discussion of the, you don't have to go through the state court process. And that doesn't apply just to the federal government and the Tucker Act. It applies also to the states. He discusses that, which is interesting because in Judge Ho's decision, he references Justice Kagan's dissent in that case as pointing out that there is no waiver of sovereign immunity really discussed in the majority opinion. I think that's where both Judge Ho and Judge Baldock missed what Justice Roberts was after, which is that the Fifth Amendment is self-effectuating. It happens the moment that the property is taken and just compensation isn't provided. And the attempt to cabin that decision into, well, that applies just to local municipalities, I don't think is found anywhere in Justice Roberts' reasoning. Likewise, I don't think that you can ignore that Justice Roberts was aware of the 11th Amendment immunity issues surrounding this in his decision in Nix, which is essentially what Judge Ho and Judge Baldock are both arguing for, is that that decision doesn't discuss 11th Amendment immunity, even though Justice Kagan does in her dissent. So we should apply 11th Amendment immunity to these Fifth Amendment takings. I think Justice Roberts was broadening Fifth Amendment takings under Section 1983. He even makes reference in his opinion to the Fourth Amendment context. I think that's really what's at issue here. So this idea that landowners united under the Tax Injunction Act and under the state court proceeding is the exact opposite of what Justice Roberts is getting at in his majority opinion. I think that's also reflected in Justice Thomas' concurring opinion that there's this concept that the Fifth Amendment takes effect the moment that the property is taken. Here, when the state of Colorado passed an ex post facto law to claw back these tax credits, at that moment when they clawed back those tax credits, that's when the taking without just compensation occurred, because they took away the just compensation. And that's ultimately what we're asking the court to do in this instance, is to hold the state of Colorado accountable to the Fifth Amendment under Section 1983 and recognize that Justice Roberts' decision cuts off this longstanding chain of cases regarding 11th Amendment immunity for compensation from a citizen against the state. If the court would permit, I would like to invite Noah Patterson to come up to the podium. Good morning, and may it please the court. My name is Noah Patterson, and I am appearing on behalf of the Appalese. With me at counsel table is Natalie Powell. This case concerns tax credit claims that were denied under Colorado's statutory process. Members of Landowners United Advocacy Foundation, which I'll refer to as Landowners, allege that Colorado incorrectly evaluated their tax credit claims. Landowners seeks to prevent Colorado from challenging conservation easement tax credits, even if those credits are overvalued. Further, the relief that Landowners seeks here would likely require ongoing federal court supervision of Colorado's tax collection. There are three reasons that the district court's dismissal of this case should be affirmed. First, the Tax Injunction Act bars this case. Second, the comma T doctrine between federal and state courts supports dismissal. And third, the claims against the real estate Appalese are moot and barred by the 11th Amendment. So first, the district court correctly held that all the claims in this case are barred by the Tax Injunction Act. Now, Landowners tries to make this case about anything but the plain language of the Tax Injunction Act, but that language is dispositive here, and so that's where I'm going to start. The Tax Injunction Act provides that federal courts shall not enjoin, suspend, or restrain the assessment, levy, or collection of any tax under state law where a plain, speedy, and efficient remedy may be had in the courts of such state. So there are two requirements in the TIA. The first requirement is the enjoin, suspend, or restrain the assessment, levy, or collection of state tax requirement. And the second requirement is the plain, speedy, and efficient state court remedy requirement. Now, the district court found that the first requirement is satisfied here because the relief that landowners seeks would prevent Colorado from challenging tax credits, which would prevent Colorado from collecting tax revenue. In our response brief, we go in detail through each of the requests for relief that landowners makes and explain why each one satisfies that first Tax Injunction Act requirement. And Landowners has not responded to this explanation. Now I think this is also a good time to just touch on HIBs. Judge Hartz, you have the exact right reading of HIBs. The holding in HIBs is that a challenge to the provision of a tax state revenue is not barred by the Tax Injunction Act. That's exactly the opposite of what we have here. What we have here is a challenge to denials of tax credits, not to the provision of a tax credit, challenge to denials of tax credits that would decrease state revenue. So this is exactly the opposite of the situation in HIBs, and HIBs does not apply. Now, Landowners argues that the important part of HIBs is that it's an establishment clause case and that important constitutional rights somehow change the Tax Injunction Act calculus. That's not correct. The U.S. Supreme Court has already applied the Tax Injunction Act to another First Amendment case. I believe it was a free exercise case. The Grace Brethren Church case is cited in the briefs. The U.S. Supreme Court and the federal courts have also applied the Tax Injunction Act to other important constitutional rights, including one takings case, which we cited in the briefs, which was the lawyer v. Hiltahead case, as well as equal protection and due process cases as well. So the type of constitutional right at issue has no bearing on the Tax Injunction Act analysis. What you look at is whether the language itself in the Act is satisfied. And so I'm going to move now to the second Tax Injunction Act requirement. That's the speedy or plain speedy and efficient state court remedy. The district court found that that is also satisfied here because Colorado offers that plain, speedy, and efficient state court remedy. Landowners does not appear to dispute this finding. Instead, landowners cites the Nick case and argues that that case resolves this issue in its favor. It does not. Nick does not even concern the Tax Injunction Act. It instead overruled the requirement that a property owner must first bring a case in state court to seek just compensation before that property owner could bring a takings case, have an actionable takings case in federal court. So the issue in Nick is one of rightness. That is not the issue here. The issue here is whether the plain language of the Tax Injunction Act is satisfied. And because it is, this case must be dismissed. If there aren't any questions about the Tax Injunction Act, I will now move on to Comity. The Comity Doctrine also supports dismissal. The Comity Doctrine encourages federal courts to restrain from hearing cases that risk disruption of state tax administration or state fiscal operations. In this case, the relief that landowners seeks would prevent Colorado from challenging conservation easement tax credits, which would prevent Colorado from collecting tax revenue. That would both disrupt tax administration as well as fiscal operations in Colorado. Now, landowners does not address the substantive requirements of the Comity Doctrine. Instead, landowners appears to argue that Comity can't be invoked in takings cases. But that's not correct. The Lawyer v. Hilton Head case I cited earlier, that was decided both on Tax Injunction Act and on Comity grounds, and it included a takings case that was barred for those reasons. And Comity has also been applied to other cases with other important constitutional rights, including equal protection and due process. So Comity applies here. The last point is just that the claims against the real estate appellees are also barred because they are moot and because they are barred by the 11th Amendment. They are moot because in 2018, the General Assembly of Colorado passed House Bill 18-1291, and that fully eliminated the Division of Real Estate's role in the conservation easement tax credit program. So going forward, the Division of Real Estate and the real estate appellees have no connection at all to this tax credit program. Because all of landowners' claims for relief are prospective, there's no way that the real estate appellees can provide any of that relief, and therefore those claims are moot. They're also barred by the 11th Amendment. The only exception to the 11th Amendment doesn't apply here. The complaint only alleges facts regarding tax credit claims that were made before 2014. And during that period, the Department of Revenue, not the Division of Real Estate, was the sole state agency in charge of administering the tax credit program. And under the ex parte young doctrine to be a proper state official that's being sued, you have to have a connection to the statutory system at issue, and you also have to have a duty or an ability to enforce that system. Because the real estate appellees had no duty or ability to enforce the statutory system during the years at issue, the 11th Amendment bars the claims against them. If there are no further questions, we just request that the District Court assume that you affirm the District Court's dismissal of this case and leave the state tax issues in this case for resolution by state courts. Thank you. A couple of points to address that opposing counsel raised. The first I think I'd like to address is the comedy discussion. I think that really when you get down to looking at that, the state of Colorado raises it for the point of ripeness. I think comedy also stands for the proposition of exhaustion in takings cases. And I think that's what becomes at issue in Nick. Nick didn't deal just with ripeness. Nick dealt with exhaustion of state court remedies. And the court was clear that was no longer a requirement, that the moment that you're taking became ripe, which was when the property was taken without just compensation, you could proceed under Section 1983, which is what we've done in this case. I think that that's more on fours with what we're doing here. Now certainly that doesn't completely resolve the issue of whether or not this is a takings case involving the taking of private property without just compensation, or this is merely a tax dispute. And I think it's clear from the briefing from both parties that that is really ultimately, as your Honor has pointed out, a very high hill for us to climb. But it is a surmountable hill. And I think that, again, looking at more of the nuances when it comes to whether this is, and the facts of whether this is a takings case or a tax case, are important. The state of Colorado offered, and in consideration for the taking of private property, or the donating of private property in this instance, conservation easements, they offered tax credits. That's the consideration. This isn't a dispute about what the tax code does or does not say about this. This is a dispute about whether or not that just compensation could be reduced ex post facto. And I think, and I think this is a major point that the District Court missed, I think that the prohibition on an ex post facto law contained in the Colorado Constitution should be given more weight in deciding what this actually is. That in combination, of course, with the prohibition of taking without property, or taking property without just compensation. Colorado has clearly run afoul of several of their own provisions in the Constitution, their Constitution, not to mention the Fifth Amendment. And this Court should find that this is a takings case where they have taken private property without just compensation. The fact that it gets wrapped around the axle on a Tax Injunction Act issue, I think is resolved through Hibbs. Thank you. Thank you, Counsel. Case is submitted and Counsel are excused.